UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HP, INC., <br><br> Plaintiff, <br><br> v. <br><br> TÜV RHEINLAND OF <br> NORTH AMERICA, INC., <br><br> Defendant. | Case No. 21-CV-11575-AK |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTIONS TO DISMISS**

**A. KELLEY, D.J.**

This is a contract action arising out of a personal injury action that has been litigated in the state courts of Oregon. Plaintiff HP, Inc. ("HP"), a global technology corporation, seeks to recover against Defendant TÜV Rheinland of North America ("TÜV"), a testing laboratory, after a device certified by TÜV exploded in an HP facility in Oregon and injured a worker. TÜV moves to dismiss this action for failure to state a claim. For the reasons described below, that motion will be **GRANTED** and the complaint will be **DISMISSED** without prejudice.

I.   **FACTUAL and PROCEDURAL BACKGROUND**

On a motion to dismiss, the Court accepts as true the facts as pleaded in the complaint. HP, a California-based corporation, operates a facility in Corvallis, Oregon. [Dkt. 1 ("Compl.") ¶¶ 1, 6]. Prior to March 2018, HP contracted with Proton Energy Systems ("Proton") to build an

1

H Series 6 Hydrogen Generator ("the generator") for use at the Corvallis HP facility. [Id. ¶ 7]. This generator included two condensate drain traps designed and manufactured by Spirax Sarco, Inc. ("Spirax"). [Id. ¶ 8]. Proton, a Connecticut-based company, then contracted with TÜV, a Massachusetts-based company, for testing and certification of the generator. [Id. ¶¶ 2, 12]. TÜV tested and certified the generator as meeting applicable standards prior to it being installed at the Corvallis HP facility. [Id. ¶ 12]. TÜV performed its testing in Connecticut. Cox v. HP, Inc., 492 P.3d 1245, 1249–50 (Or. 2021). TÜV had previously certified other pieces of equipment located at the Corvallis HP facility. [Compl. ¶ 18].

On March 22, 2018, the generator exploded at the Corvallis HP facility. [Id. ¶ 6]. The explosion injured William Cox ("Mr. Cox"), a Proton employee who was working on commissioning the generator. [Id. ¶¶ 6, 7]. HP alleges that the condensate drain traps had been defectively designed and manufactured by Spirax, and that these defects proximately caused the explosion and injuries to Mr. Cox. [Id. ¶¶ 9–11].

In April 2019, Mr. Cox filed a personal injury action in the Multnomah County Circuit Court in Oregon, naming HP and Spirax as defendants and claiming over $23 million in damages. [Id. ¶ 22]. HP has denied liability in this action, [id. ¶ 23], and timely filed a third-party complaint against TÜV and Proton, Cox v. HP, Inc., Case No. 19CV14525 (Or. Cir. Ct., filed Apr. 2, 2019). TÜV moved to dismiss HP's claim for lack of personal jurisdiction, which the Oregon trial court denied. Cox, 492 P.3d at 1247. On petition for writ of mandamus, the Oregon Supreme Court reversed, ordering the trial court to dismiss HP's claim against TÜV on personal jurisdiction grounds. Id. at 1248. HP then re-filed its third-party complaint against TÜV in this Court, and TÜV—assenting to personal jurisdiction—now moves to dismiss for failure to state a claim. [Dkt. 13]. In July 2022, during the pendency of this motion, the parties

to the underlying Oregon action notified the Oregon trial court that they had reached a settlement, although that case has not yet been dismissed. See Cox, No. 19CV14525 (docket entry of July 19, 2022).

## II. DISCUSSION

### A. Pleading Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

### B. Claim 1 – Breach of Contract as Third-Party Beneficiary

HP's first claim alleges that it is a third-party beneficiary to a contract between Proton and TÜV, and that it has suffered damages as a result of TÜV's breach of that contract. Because the parties did not brief the Court on choice of law, the Court's first task is to determine which

state's contract law should govern this claim for purposes of this motion.

### i. Choice of Law

A federal court sitting in diversity jurisdiction applies the choice-of-law rules of its forum state—here, Massachusetts. See Klaxon Co. v. Stentor Co., 313 U.S. 487 (1941). In contract actions, Massachusetts courts will enforce a choice-of-law clause "as long as the result is not contrary to public policy." Hodas v. Morin, 814 N.E.2d 320, 325 (Mass. 2004) (citation omitted). Otherwise, courts look first to "the place where the contract was made" as a "general rule." Choate, Hall & Stewart v. SCA Servs., Inc., 392 N.E.2d 1045, 1048 (Mass. 1979). However, courts will not apply the law of the state where the contract was formed if the parties had "no other substantial contact with that State." Id. at 1049. Rather, the law of the state with the "most significant relationship" to the contract applies. See id. (quoting Restatement (Second) of Conflict of Laws § 188 (1971)).

At this motion to dismiss stage, the contract between Proton and TÜV that forms the basis for HP's claims is not before the Court, and the parties have not alleged that this contract contains a choice-of-law clause. Nor do the pleadings indicate the state in which the contract was formed. However, the findings of the Oregon Supreme Court in its earlier opinion in this matter make clear that Connecticut is the state with the "most significant relationship" to the contract between Proton and TÜV, as Proton is based in Connecticut, the generator was manufactured in Connecticut, and TÜV performed "all" of its work at Proton's facility in Connecticut. Cox, 492 P.3d at 1249–50. Thus, the Court will assume without deciding that

Connecticut law applies to Claim 1.[1] Because the Court is without the information, in the form of the contract between Proton and TÜV, necessary to make a more determinative holding as to choice of law, this assumption is made for purposes of resolution of this motion only.

### ii. Standard and Analysis

Connecticut applies a familiar common-law standard for breach of contract claims, the elements of which are "the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." CCT Comms., Inc. v. Zone Telecom, Inc., 172 A.2d 1228, 1240 (Conn. 2017). Further, in addition to the parties to the contract, "[a] third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract." Wilcox v. Webster Ins., Inc., 982 A.2d 1053, 1062 (Conn. 2009) (citation omitted). This doctrine of third-party beneficiary status is the basis for HP's Claim 1.

"The ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the *intent of the parties to the contract* was that the promisor should assume a direct obligation to the third party beneficiary." Id. (emphasis added) (citation and alterations omitted). The third party must be an *intended*, rather than merely a *foreseeable*, beneficiary in order to assert a claim, and must have been so intended by both parties to the contract. Grigerik v. Sharpe, 721 A.2d 526, 539 (Conn. 1998). This requirement of mutual intent upholds the state's policy of "certainty in enforcing contracts," as it "minimize[es] the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could

---

[1] As TUV notes in its memorandum in support of this motion, there is no conflict between Connecticut law and Massachusetts law on the relevant claims. [Dkt. 14 at 5 n.2]. Accordingly, the Court's interpretation of Connecticut law here would apply with equal force if Massachusetts law governed HP's claims.

5

be held to know, would ultimately be his contract obligee." Dow & Condon, Inc. v. Brookfield Development Corp., 833 A.2d 908, 914 (Conn. 2003).

Connecticut courts have relied on the Restatement (Second) of Contracts in determining whether parties to a contract intended a third party to be a beneficiary. Grigerik, 721 A.2d at 538–39; Anderson v. Town of Bloomfield, 247 A.3d 642, 648 (Conn. App. 2021). The Restatement identifies a third-party beneficiary as follows:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts, § 302(1) (1981). Thus, where a contract does not expressly state that the parties intended to create enforcement rights in a third party, courts may infer the requisite intent where the performance of the contract will satisfy an obligation of one contractual party to pay money to the third party, or circumstances indicate that the contractual parties intended to give a contractual benefit to the third party. See also Dow & Condon, 833 A.2d at 914 ("[I]t is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary.")

Turning to the operative complaint, HP alleges that "Proton entered into a contract with TÜV for the testing and certification *of the type of Generator at issue in this case*." [Compl. ¶ 12 (emphasis added)]. Further, it alleges that "Proton and TÜV intended TÜV to assume a direct obligation to Plaintiff"; and that "[b]oth Proton and TÜV knew that certification by an entity such as TÜV would be necessary for Plaintiff to purchase and use the Generator." [Id. ¶ 13]. The complaint contains no further allegations about the nature or circumstances of the contract

6

between Proton and TÜV; however, it does make additional allegations concerning HP's relationships with both Proton and TÜV.[2] Likewise, the complaint alleges that HP "relied upon TÜV's experience and certification of the Generator in purchasing the Generator from Proton," [id. ¶ 20]; and that TÜV "failed to provide adequate testing and certification of the Generator" and "directly and proximately caused" the explosion and injuries to Mr. Cox, [id. ¶ 21].

These allegations do not state an actionable third-party beneficiary claim for breach of contract because they, collectively, do not state facts upon which this Court could plausibly conclude that both Proton and TÜV intended for TÜV to "assume a direct obligation" to HP. Wilcox, 982 A.2d at 1062. HP's statement in Paragraph 13 of the complaint that "Proton and TÜV intended TÜV to assume a direct obligation to Plaintiff" is a bare conclusion of law that the Court may not credit. See García-Catalán, 734 F.3d at 103. Further, its allegation in the same paragraph that Proton and TÜV "knew that certification by an entity such as TÜV would be necessary" for HP to purchase the generator may perhaps establish that HP was a *foreseeable* beneficiary of the contract between Proton and TÜV, but cannot, on its own, support the conclusion that the parties *intended* to confer contractual rights on HP. See Grigerik, 721 A.2d at 539 (emphasizing distinction between intent and mere foreseeability). The difference between a party's intent and its mere knowledge carries manifest weight throughout civil and criminal law, and allegations that suggest knowledge alone are not sufficient to meet this standard.

The complaint's description of the contract between Proton and TÜV further renders HP's third-party beneficiary claim implausible. It alleges that the contract covered "the type of Generator at issue in this case," [Compl. ¶ 12], and thus, does not allege that the contract

---

[2] These include allegations that Proton built the generator specifically for HP, [Compl. ¶ 7]; and that TUV had completed certifications and field evaluations of other pieces of equipment located at the Corvallis HP facility, [id. ¶ 18].

7

specifically anticipated the particular generator that Proton sold to HP. HP's own briefing reinforces this point: it describes the contract as one "to test and certify the *model* of Generator to be installed at HP's facility." [Dkt. 18 at 3]. These descriptions of the contract—which, again, is not before the Court at this stage of the litigation—suggest that it was a broader agreement for TÜV to test and certify a number of Proton-made generators of this model, and not a contract for TÜV to test and certify the one generator that HP purchased. Thus, the Court cannot plausibly conclude on these allegations that Proton and TÜV specifically intended to confer contractual rights on HP when reaching an agreement for TÜV to test several generators, all but one of which were not purchased by HP.

Finally, HP points to its allegations that it "relied upon TÜV's experience and certification of the Generator in purchasing the Generator from Proton," [Compl. ¶ 20]; and that TÜV "failed to provide adequate testing and certification for the Generator" and "directly and proximately caused" injury, [id. ¶ 21]; as grounds that may sustain Claim 1. These allegations, although perhaps relevant to TÜV's tort liability for purposes of Claim 2, do not speak to the intent of Proton and TÜV to confer contractual rights on HP, and thus do not support this claim.

Accordingly, because the pleadings do not state sufficient details about the contract to support a claim for third-party beneficiary liability, TÜV's motion to dismiss this claim will be granted and the claim is dismissed without prejudice.

### C. Claim 2 – Contribution

Second, HP alleges that TÜV is liable to it in contribution for any damages it may owe to Mr. Cox in the Oregon action. Again, because the parties did not brief the Court on choice of law, the Court must first determine which state's contribution law to apply to the claim.

8

### i. Choice of Law

Contribution is a common-law doctrine that applies where "two or more persons become liable in tort to the same person for the same harm." Restatement (Second) of Torts § 886A (1979). In tort actions, Massachusetts courts apply the substantive laws of the jurisdiction where the tort occurred, and Massachusetts rules of procedure. Cosme v. Whitin Mach. Works, Inc., 632 N.E. 2d 832, 834 (Mass. 1994). Contribution is a substantive right governed by the law of the place of the tort. Lessard v. Packard Mach. Co., Inc., No. 955523, 1998 WL 1181782 at *2 (Mass. Super. Ct. July 9, 1998). Because the underlying tort giving rise to the contribution claim occurred in Oregon, Oregon law thus applies to Claim 2.

### ii. Standard and Analysis

Oregon provides a statutory cause of action for contribution. O.R.S. § 31.800. Under that statute, "where two or more persons become jointly or severally liable in tort for the same injury … there is a right of contribution among them even though judgment has not been recovered against all or any of them, [but] [t]here is no right of contribution from a person who is not liable in tort to the claimant" Id. § 31.800(1). Further, an action for contribution exists "only in favor of a tortfeasor who has paid more than a proportional share of the common liability, and the total recovery of the tortfeasor is limited to the amount paid by the tortfeasor in excess of the proportional share." Id. § 31.800(2). "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement." Id. § 31.800(3).

Here, HP has provided a more plausible basis for its claim. The complaint alleges in detail the ways in which TÜV may be liable in tort in relation to Mr. Cox's injuries: it establishes

that TÜV may plausibly have undertaken a duty by certifying that the generator met safety and regulatory compliance standards; may plausibly have breached that duty by certifying a defective generator; and may plausibly have been a proximate cause of Mr. Cox's injuries by failing to adequately test the parts of the generator that caused those injuries. [See Compl. ¶¶ 12–21]. There is no reason to doubt, on the facts pled in this complaint, that Mr. Cox could bring a tort action against TÜV sufficient to survive a motion to dismiss.

However, HP may sustain a contribution action only if it has paid to Mr. Cox "more than a proportional share of the common liability," O.R.S. § 31.800(2), and the complaint alleges neither that any judgment or stipulation has found HP and TÜV to be commonly liable to Mr. Cox, nor that HP has paid any share of this common liability. The complaint merely states that Mr. Cox has brought suit against HP and TÜV in Oregon, creating the potential for common liability. [Id. ¶ 22]. The docket in that action indicates that the parties have reached a settlement, but that, by the stipulation of the parties, a settlement order of dismissal has not yet entered. Cox, No. 19CV14525 (docket entries of July 19, 2022, and Aug. 17, 2022).

This court thus cannot grant relief on Claim 2 until the Oregon courts adjudicate the question of the potential common liability of HP and TÜV to Mr. Cox, and of HP's potential payment of greater than its proportional share of that liability. Accordingly, TÜV's motion to dismiss this claim will be granted and the claim is dismissed without prejudice.

### III.   CONCLUSION

For the reasons stated above, TÜV's motion to dismiss will be **GRANTED**.  The complaint is **DISMISSED** without prejudice.

**SO ORDERED.**

September 27, 2022                                                             /s/ Angel Kelley
                                                                                            ANGEL KELLEY
                                                                                            U.S. DISTRICT JUDGE